UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

CHRISTOPHER SAUNDERS,                           No. 3:14-cv-00022-HU

            Plaintiff,                          **FINDINGS AND**
                                                **RECOMMENDATION**
      v.

RAMS SPECIALIZED SECURITY
SERVICES, INC., an Oregon
corporation,

            Defendant.
_____

Eric J. Fjelstad
Email: smithandfjelstad@frontier.com
Smith & Fjelstad
722 N. Main Avenue
Gresham, OR 97030
Telephone: (503) 669-2242
Facsimile: (503) 669-2249

      Attorney for Plaintiff

Daniel R. Barnhart
Email: dbarnhart@bullardlaw.com
Bullard Law
200 S.W. Market Street, Suite 1900
Portland, OR 97201
Telephone: (503) 248-1134
Facsimile: (503) 224-8851

      Attorney for Defendant

Page 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiff Christopher Saunders ("Plaintiff") brought this employment action against his former employer, Defendant RAMS Specialized Security Services, Inc. ("Defendant"), on January 6, 2014, alleging claims of religious discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2000e-17, and Oregon's anti-discrimination in employment statute, OR. REV. STAT. § 659A.030. Defendant now moves, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), 12(b)(6) and 12(c), to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to file within the requisite period of limitations. For the reasons that follow, Defendant's motion (Docket No. 8) to dismiss should be granted. Plaintiff's Title VII claim should be dismissed with prejudice and Plaintiff's state law claim should be dismissed without prejudice, in accordance with the Court's discussion with counsel during oral argument.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff worked for Defendant as an armed security guard from February 10, 2010, until his termination "on about September 24, 2012." (Compl. ¶¶ 9, 13.) Plaintiff alleges that a majority of Defendant's owners and many of its employees, including upper management, are members of the Mormon Church, and that similarly situated individuals who were Mormon were treated more favorably. (Compl. ¶¶ 10, 17.) Plaintiff also alleges that he "was very often exposed to subtle forms of attempted indoctrination into the Mormon religion," such as "tapes of Mormon speakers" and "negative

comments relating to [his] lack of belief in the Mormon religion,"
throughout his period of employment.  (Compl. ¶¶ 11, 17.)

It appears, however, that one incident in particular gave rise
to the present dispute.[1]  (*See* Compl. ¶¶ 9-13.)  In late August or
early September 2012, Plaintiff was en route to his job site at
Bonneville Dam when "[a]nother driver tried several times to run
[him] off the road for no apparent reason" and then proceeded to
follow Plaintiff "as he turned off Highway 84 to enter the secured
Bonneville Dam site."  (Compl. ¶ 12.)  Concerned that the driver
would attempt to gain entry to the secured site, Plaintiff "called
for support and several coworkers came to his aid."  (Compl. ¶ 12.)
Plaintiff asked the driver to leave the premises in accordance with
Defendant's protocol, and the driver obliged.  (Compl. ¶ 12.)

Plaintiff was suspended shortly thereafter and subsequently
terminated "on about September 24, 2012," despite being assured
that "he had done nothing wrong."[2]  (Compl. ¶ 13.)  The unnamed
"coworker who constantly forced [Plaintiff] to listen to Mormon
speakers on tape, and whose father-in-law was a Mormon and a member
of the defendant's upper management, talked to upper management
about [Plaintiff's] behavior" prior to his suspension.  (Compl. ¶
13.)  It is Plaintiff's position that Defendant chose to terminate
his "employment because he was not Mormon and complained about the

[1] Indeed, Plaintiff's complaint focuses specifically on this
sole incident.

[2] With respect to the termination date, Defendant's counsel
states: "The actual date of termination was September 21, 2012.
This three-day discrepancy, however, makes no difference to the
outcome of this motion."  (Def.'s Mem. Supp. at 2; *see also*
Barnhart Decl. ¶ 2.)

Page 3 - FINDINGS AND RECOMMENDATION

efforts to indoctrinate him into that faith." (Compl. ¶¶ 17, 23.) Plaintiff also notes that "Mormon coworkers routinely were not disciplined for conduct that a reasonable person would consider more egregious . . . than the conduct for which [he] was disciplined." (Compl. ¶ 17.)

On the basis of the foregoing events, Plaintiff filed the present action against Defendant on January 6, 2014, alleging causes of action for reverse religious discrimination under Title VII and Oregon Revised Statute ("ORS") 659A.030.[3] (Compl. at 4-5; Civil Cover Sheet at 1.) The complaint indicates that Plaintiff filed a claim with the Oregon Bureau of Labor and Industries ("BOLI") on August 5, 2013. (Compl. ¶ 8.) The complaint goes on to state: "BOLI supplied [Plaintiff] with a right to sue notice. [Plaintiff] has filed these claims within [ninety] days from the date of the right to sue notice. [Plaintiff]'s BOLI claim encompassed the types of claims now asserted in this lawsuit." (Compl. ¶ 8.) On June 13, 2014, Defendant filed a motion to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1), 12(b)(6) and 12(c)—which is now before the Court.

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Motion

A motion to dismiss brought pursuant to Rule 12(b)(1) addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A Rule

---

[3] It should be noted that the date affixed to the end of the complaint is November 15, 2013. (Compl. at 7.)

Page 4 - FINDINGS AND RECOMMENDATION

12(b)(1) motion may attack the substance of the complaint's jurisdictional allegations even though the allegations are formally sufficient. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979-80 (9th Cir. 2007) (courts treat motions attacking the substance of a complaint's jurisdictional allegations as a Rule 12(b)(1) motion); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("'[U]nlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court.'" (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989))).

**B.    Rule 12(b)(6) Motion**

In the Rule 12(b)(6) context, the court must accept all of the claimant's material factual allegations as true and view all facts in the light most favorable to the claimant. *Reynolds v. Giusto*, No. 08-CV-6261-PK, 2009 WL 2523727, at *1 (D. Or. Aug. 18, 2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "In sum, for a complaint to survive [under the Rule 12(b)(6) standard], the non-conclusory factual content, and reasonable inference from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

*///*

Page 5 - FINDINGS AND RECOMMENDATION

1    **C.   Rule 12(c) Motion**

2         "After the pleadings are closed——but early enough not to delay

3    trial——a party may move for judgment on the pleadings." FED. R.

4    CIV. P. 12(c).   "In considering a motion for judgment on the

5    pleadings, the district court must view the facts presented in the

6    pleadings and the inferences to be drawn from them in the light

7    most favorable to the nonmoving party." *David v. Allstate Ins.*

8    *Co.*, No. CV 13-4665-CAS, 2013 WL 5178558, at *1 (C.D. Cal. Sept. 9,

9    2013); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713

10   (9th Cir. 2001) ("A judgment on the pleadings is properly granted

11   when, taking all the allegations in the pleadings as true, [a]

12   party is entitled to judgment as a matter of law.")

13        For purposes of a Rule 12(c) motion, "the moving party

14   concedes the accuracy of the factual allegations of the complaint,

15   but does not admit other assertions that constitute conclusions of

16   law or matters that would not be admissible in evidence at trial."

17   *David*, 2013 WL 5178558, at *1 (citing 5C Charles Alan Wright,

18   Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*

19   § 1368 (3d ed. 2004)).   However, to the extent "a motion for

20   judgment on the pleadings is based on a defense that the complaint

21   fails to state a claim for relief, the standard applicable to a

22   motion to dismiss pursuant to Rule 12(b)(6) governs." *Merrifield*

23   *v. Schwarzenegger*, No. 04-0498 MMC, 2004 WL 2926160, at *1 (N.D.

24   Cal. Sept. 23, 2004).

**III. DISCUSSION**

25   **A.   Judicial Notice**

26        As an initial matter, the Court takes judicial of two exhibits

27   attached to Defendant's counsel's declaration filed in support of

28

Page 6 - FINDINGS AND RECOMMENDATION

the pending motion to dismiss—the first being the substantively identical complaint Plaintiff filed with the BOLI on August 5, 2013, and the second being the right-to-sue letter issued by the BOLI on October 16, 2013.[4]   *See* FED. R. EVID. 201(c)(1)-(2) (district court "may take judicial notice its own"); *Dornell v. City of San Mateo*, No. CV 12-06065 CRB, --- F. Supp. 2d --- ,2013 WL 5956316, at *2 n.3 (N.D. Cal. Nov. 7, 2013) (taking judicial notice of EEOC charge, initial complaint, state agency complaint, and state agency right-to-sue letter because they were public records whose accuracy was not in dispute); *Hughes v. County of Mendocino*, No. C 11-1319 SBA, 2011 WL 4839234, at *3 n.1 (N.D. Cal. Oct. 12, 2011) ("Authority exists for taking judicial notice of the charges and right-to-sue letters, as the contents of which are alleged in the complaint.").

**B.   Title VII Claim**

Defendant argues that this Court lacks subject matter jurisdiction because Plaintiff failed to file a timely charge of discrimination with the Equal Employment Opportunity Commissioner ("EEOC"). "A Title VII plaintiff must file a charge with the EEOC within 180 days or with a state or local agency within 300 days after the allegedly discriminatory act before seeking federal adjudication of his claim." *Clink v. Or. Health & Sci. Univ.*, No. 3:13-cv-01323-SI, --- F. Supp. 2d --- , 2014 WL 1225210, at *2 (D. Or. Mar. 24, 2014) (citations omitted).  Thereafter, "[a] plaintiff

---

[4] Plaintiff signed the BOLI complaint in the presence of a notary public on May 15, 2013. (Barnhart Decl. Ex. A at 3.)  The BOLI complaint is date stamped August 5, 2013 by the BOLI civil rights division.  (Barnhart Decl. Ex. A at 1.)

generally has 90 days to file suit in federal court after receiving an EEOC or state agency right-to-sue letter." *Id.*

The ninety-day filing period acts as a statute of limitations on Title VII claims as well as claims brought under ORS 659A.030. *See Scholar v. Pac. Bell*, 963 F.2d 264, 266–67 (9th Cir. 1992) ("The requirement for filing a Title VII civil action within 90 days from the date EEOC dismisses a claim constitutes a statute of limitations."); *see also Duffy v. Oregon Glass Co.*, No. 06-CV-1579-BR, 2008 WL 1925038, at *1-3 (D. Or. Apr. 29, 2008) (holding that the plaintiff's state law claims, including an unlawful retaliation claim under ORS 659A.030, were time-barred because she filed her complaint more than ninety days after the BOLI issued its right-to-sue letter).

The following facts, drawn from the complaint and matters susceptible to judicial notice, do not appear to be in dispute: (1) the last allegedly discriminatory act, according to the complaint, occurred "on about September 24, 2012," when Plaintiff was terminated by Defendant; (2) roughly 315 days later, on August 5, 2013, Plaintiff filed a complaint with the BOLI——which is the only administrative charge that Plaintiff claims to have ever filed; (3) on October 16, 2013, the BOLI issued a right-to-sue letter to Plaintiff; and (4) approximately 82 days later, on January 6, 2014, Plaintiff filed the present action against Defendant based on the

very facts that formed the basis of his BOLI complaint.[5] (Compl. ¶¶ 8, 13-14, 17, 23; Barnhart Decl. Ex. A-B.)

The foregoing demonstrates that Plaintiff failed to file a timely charge with the EEOC or the BOLI. *See, e.g., Pearson v. Reynolds Sch. Dist. No. 7*, No. 3:12-CV-01146-HU, 2014 WL 715510, at *11 (D. Or. Feb. 24, 2014) ("In jurisdictions, such as Oregon, that have joint work-sharing agreements between the EEOC and an equivalent state agency, an employee must file a discrimination claim with either the equivalent state agency (BOLI, in Oregon), or the EEOC, within 300 days of the alleged unlawful employment practice.") (citation, internal quotation marks, and brackets omitted).

At a minimum, this means that Plaintiff's Title VII claim is time-barred. *See Knighton v. Kemper Sports Mgmt., Inc.*, No. 6:12-CV-00379-TC, 2012 WL 5381578, at *3 (D. Or. Sept. 25, 2012) (granting Rule 12(b)(6) motion to dismiss Title VII claim where the plaintiff filed his charge well outside the 300-day time limit); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (explaining that a claim that is not filed within 300 days is time-barred). It also means that the Court is without subject matter jurisdiction. *See, e.g., B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) ("In order to establish subject matter jurisdiction over her Title VII claim, Plaintiff was

---

[5] According to Defendant's counsel, "[i]nitially BOLI dual filed Plaintiff's Complaint with the [EEOC], but then closed the EEOC case because Plaintiff failed to timely file his charge." (Def.'s Mem. Supp. at 2.)

1  required to . . . exhaust her administrative remedies by filing a

2  timely charge with the EEOC, or the appropriate state agency").

3       In his three-page response brief, filed on June 26, 2014,

4  Plaintiff seemingly concedes that, at least on the record before

5  the Court, his Title VII claim is untimely:

> 6   The federal cause of action [under Title VII] was filed
>     too late based on the filing date with the [BOLI] and
> 7   [Plaintiff's] termination, at least based on the
>     allegations presently included in the Complaint. Based
> 8   on the facts known at this time, however, [Plaintiff's]
>     federal claim would not be time barred if he is allowed
> 9   to amend his Complaint. . . .
>
> 10      . . . .
>
> 11      [Plaintiff] cannot dispute that the non-conclusory
>     factual content of the Complaint fails to withstand a
> 12   statute of limitations challenge. However, if this were
>     a summary judgment motion, [Plaintiff] would submit
> 13   evidence that the violation of his rights was a
>     continuing one until about six months after the date of
> 14   his actual termination that is stated in the Complaint.
>     The allegation of a continuing violation unfortunately
> 15   was omitted from the Complaint. Further evidence could
>     demonstrate, however, that the facts supporting the
> 16   continuing violation were raised with the [BOLI].
>
> 17      Plaintiff thus seeks permission to file an Amended
>     Complaint asserting facts in support of a continuing
> 18   violation theory that would put this case squarely within
>     the statutory time limitations period.

19

20 (Pl.'s Resp. Def.'s Mot. at 1-2.)

21      The Court recommends denying Plaintiff leave to amend his

22 Title VII claim because it cannot be cured by the allegation of

23 other facts occurring post-termination. *See generally Lopez v.*

24 *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (stating the standard

25 for granting leave to amend). Not only was the BOLI complaint

26 filed roughly 315 days after Plaintiff was terminated by Defendant,

27 it also provided the following "[l]egal [b]asis for [his] [c]laim":

28

Page 10 - FINDINGS AND RECOMMENDATION

1
2
3
4
5
6

I allege that Respondent violated my right not to be
discriminated against because I am not a member of the
Mormon church and [I] complained about being subjected to
religious indoctrination attempts while working for
Respondent. I was essentially forced to listen to
coworkers try and convert me many times while at work for
Respondent and [I] complained about these acts to my
supervisor. Eventually, I was terminated for doing
nothing wrong. I believe that my termination was due to
the fact that I complained and because I would not
convert to Mormonism.

7  (Barnhart Decl. Ex. A at 1.)    In the ensuing five paragraphs,

8  Plaintiff explained what "cause[d] [him] to believe that Respondent

9  discriminated against [him] based on religion[,]" and the latest

10  act of discrimination alleged by Plaintiff is Defendant's decision

11  to terminate his employment.    (*See* Barnhart Decl. Ex. A at 2.)

12        Now, after filing a complaint in federal court that for all

13  intents and purposes is substantively identical to the BOLI

14  complaint, Plaintiff seeks leave to amend in order to allege facts

15  in support of a continuing violation theory.    The Ninth Circuit,

16  however, "has held that the continuing violation doctrine is not

17  available in cases involving employment termination. '[I]t is the

18  continuity of the employment relationship that sustains the

19  violation, and when that relationship is severed [i.e., when

20  employment is terminated], the violation ceases.'"    *Villone v.*

21  *United Parcel Servs., Inc.*, NO. CV-09-8213-PHX-LOA, 2011 WL

22  4402954, at *7 (D. Ariz. Sept. 22, 2011) (internal citation

23  omitted; brackets in the original), *aff'd*, 549 F. App'x 798 (9th

24  Cir. 2013).

25        Indeed, as the Ninth Circuit explained in *Grimes v. City &*

26  *County of San Francisco*, 951 F.2d 236 (9th Cir. 1992):

27
28

This court has also held on several occasions that the
continuing violations doctrine does not apply to employee
termination cases.  The continuing violation doctrine is

Page 11 - FINDINGS AND RECOMMENDATION

> intended to allow a victim of systematic discrimination to recover for injuries that occurred outside the applicable limitations period, as where an employee has been subject to a policy against the promotion of minorities.  The termination of employment, however, differs markedly in that the employee is severed from an ongoing relationship with the employer.  Mere continuing impact from past violations is not actionable. Continuing violations are.  Other circuits are in accord.

*Id.* at 238-39 (internal citations, quotation marks and brackets omitted).

Moreover, to the extent Plaintiff intends to plead a Title VII claim that was not before the EEOC or the BOLI (i.e., anything other than a religious discrimination claim), the Court lacks subject matter jurisdiction to hear it.  *See Lowe v. City of Monrovia*, 775 F.2d 998, 1003 (9th Cir. 1985) ("When a plaintiff fails to raise a Title VII claim before the EEOC [or an equivalent state agency], the district court lacks subject matter jurisdiction to hear it."); *Wilder v. Ariz. Bd. of Regents*, 510 F. App'x 535, 537 (9th Cir. 2013) ("The district court lacked subject matter jurisdiction over Cameron's Title VII gender discrimination claim because Cameron included no allegation of gender discrimination in her administrative charge before the [EEOC]") (citing *Lowe*, 775 F.2d at 1003-04).

Lastly, the Ninth Circuit's unpublished opinion in *Leon v. Danaher Corp.*, 474 F. App'x 591 (9th Cir. 2012), suggests that the defect in Plaintiff's Title VII discrimination claim is incurable. The plaintiff in *Leon* brought an employment action alleging retaliation and discrimination claims under Title VII and the Americans with Disabilities Act.  *Id.* at 592.  The Ninth Circuit affirmed the district court's dismissal of the plaintiff's "claims arising from events allegedly occurring during his employment"

Page 12 - FINDINGS AND RECOMMENDATION

because he failed to file a charge within the prescribed 300-day period. *Id.* The Ninth Circuit also affirmed the district court's dismissal of the plaintiff's "discrimination claims arising from events allegedly occurring after his employment, such as his former employer warning employees that [he] was a threat, because the alleged conduct did not affect his employment." *Id.* (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (noting that the Title VII anti-discrimination provision is limited to conduct that affects employment)).

## IV. CONCLUSION

For the reasons stated, Defendant's motion (Docket No. 8) to dismiss should be granted. Plaintiff's Title VII claim should be dismissed with prejudice and Plaintiff's state law claim should be dismissed without prejudice, in accordance with the Court's discussion with counsel during oral argument.

## V. SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **August 4, 2014.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due **August 21, 2014.** When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this  16th  day of July, 2014.

                                   /s/ Dennis J. Hubel
                              _____
                                   DENNIS J. HUBEL
                              United States Magistrate Judge

Page 13 - FINDINGS AND RECOMMENDATION